UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 07-05-01 |
| | : | |
| v. | : | |
| | : | |
| **LATRICE BROWN** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court impose a sentence within the Sentencing Guidelines.

**I.   BACKGROUND**

On January 8, 2007, the United States Attorney's Office for the District of Columbia filed a one count Information charging the defendant with Access Device Fraud, a Class C felony in violation of 18 U.S.C. § 1029(a)(2)(B). The Information also contains a Forfeiture Allegation, pursuant to 18 U.S.C. § 982 (a)(2)(B). On February 8, 2007, the defendant, Latrice Brown, pled guilty to the one count Information. As part of her plea, the defendant agreed that the following facts would have been established beyond a reasonable doubt had this case gone to trial:

From in or about August 2005 until in or about April 2006, the defendant LATRICE BROWN executed a scheme to wrongfully obtain, steal, or stole or obtained without authority or right credit cards issued to Candice N. Charles a District of Columbia resident as part of her scheme to defraud Ms. Charles, various credit card companies and merchants. The credit cards issued to Ms. Charles and stolen or obtained without authority or permission were issued by the following credit card companies: Circuit City; Chase Bank Master Card; Discover; Express;

Lane Bryant; Victoria Secret; NY & Co, Macys; Old Navy; Sears; Citibank Master Card;and Visa, and Target VISA.

Beginning on or about August 11, 2005, the defendant BROWN did effect transactions with one or more access devices including but not limited to the use of a Master Card # xxxx xxxx xxxx 2423 and a Chase Bank Card # xxxx xxxx xxxx 3070 both issued to another person Candice Charles to receive goods and services during a 1-year period in the District of Columbia and elsewhere for herself, the aggregate value of which is greater than $1,000.

On or about August 11, 2005, each without the authority of Ms. Charles, the defendant BROWN used a Master Card xxxx xxxx xxxx 2423 issued to Ms. Charles at a Chevron Gas Station located in the District of Columbia. The defendant BROWN used that same credit card at Gap and Shoe City stores on the same date. On or about August 13, 2005, the defendant BROWN used a Visa xxxx xxxx xxxx 9986 issued to Ms. Charles at a Wendy's Restaurant, Chevron Gas Station, and Dennys Restaurant all located in the District.

On or about March 25, 2006, the defendant BROWN made several purchases at a Circuit City electronics store located in Pentagon City Mall, Arlington, Virginia using Ms. Charles' Circuit City credit card which the defendant BROWN obtained in the District. The defendant BROWN went as far as reactivating Ms. Charles' credit card because Ms. Charles had cancelled the credit card once she had learned it had been stolen. On or about April 9, 2006, the defendant BROWN used a Chase Bank card xxxx xxxx xxxx 3070 at a Circuit City electronics store and purchased a 36 inch Sony television, a camcorder and related equipment, a portable PSP, games, music, a cordless phone, DVDs, CD Player and other items from Circuit City totaling more than $1,000. On or about June 21, 2006, special agents from the United States Secret Service (USSS)

obtained and executed a search warrant to search and seize evidence and fruits of crimes from defendant BROWN's residence. The aforementioned and other electronic devices were recovered by USSS agents during the execution of a search warrant of the defendant BROWN's residence located at 3685 Jay Street, N.E., apartment 101, on June 21, 1006. USSS agents also retrieved receipts containing Candice Charles' forged signature and stolen credit card numbers issued to Ms. Charles. USSS agents also retrieved credit cards issued to Ms. Charles from the defendant BROWN's apartment.

The actual loss to credit card companies and merchants in the aforementioned paragraphs totaled about $12,000 with an additional intended loss of $3,000 (charges that were denied).

## II.     SENTENCING CALCULATION

### A.     Statutory Minimum/Maximum

The maximum term of imprisonment is 15 years and/or $250,000 fine. PSR at ¶¶ 66 and 77.

### B.     United States Sentencing Guidelines Calculation

The Presentence Report writer has calculated defendant's total offense level to be 8 and a criminal history score of 2 points and category of III. Thus, the defendant's Guidelines range for the instant violation is 6 - 12 months of imprisonment. PSR at ¶ 67. Since the minimum term of imprisonment is i Zone B fo the Sentencing Table, the guideline sentence may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one month is satisfied by imprisonment, pursuant to USSG § 5C1.1( c). PSR at ¶ 68.

C.  The Impact of Booker

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1).  <u>Booker</u>, 543 U.S. at 258.  However, the Court expressly refused to invalidate the Guidelines in their entirety.  To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines.  <u>See</u> 18 U.S.C. Section 3554(c)(2).  The sentence will then be subject to review by courts of appeals for "reasonableness."  <u>Id.</u> at 261.

In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines.  <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing).  "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  <u>Booker</u> at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)).  In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness"

review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 250 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 304-05 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Since the Guidelines currently represent the only existing benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals. This is so, said the court in United States v. Wilson, 350 F. Supp.2d 910 (D. Utah 2005) – the day after Booker was decided – because the Guidelines

represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 950. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in Section III below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

### III. DEFENDANT SHOULD BE SENTENCED WITHIN THE GUIDELINES

The Government recommends that the Court sentence the defendant to a Guideline sentence. Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above, but would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553. Those factors fall into three main categories: the nature of the offense, the needs of the public, and the history and characteristics of the defendant. United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

This offense involves the defendant stealing the credit cards belonging to another and using them as if they belonged to her. With the increase of credit card theft and identity theft in America, tt is vital that the Court send a message to both the defendant and the community that theft of credit cards and identity will not be tolerated. The public needs to know that this behavior will not be tolerated.

Although only two points, the defendant's criminal history is of a concern. The Assault with a Deadly Weapon conviction is a violent crime and the Theft conviction reveals that she has engaged in similar conduct (taking someone else's property for her own) for which she is conviction in the instant case. A guideline sentence would serve the interests of the community and give both the government and the defendant the benefit of the bargain negotiated.

## V.     CONCLUSION

The government recommends that this Court sentence the defendant within the Sentencing Guidelines including requirements that the defendant participate and engage in

programs that would facilitate her becoming a responsible parent and citizen, i.e. anger management, vocational and employment; drug testing and treatment.

          Respectfully,

          JEFFREY A. TAYLOR
          United States Attorney
          D.C. Bar

          _____
          Angela Hart-Edwards
          Assistant United States Attorney
          Federal Major Crimes Section
          555 4th Street, N.W.  #4241
          Washington, DC 20530
          Phone: 307-0031; Fax: 514-6010
          Pa. Bar No. 61468

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant via electronic filing and notification this 4th day of May, 2007.

          _____
          Angela Hart-Edwards
          Assistant United States Attorney